Receipt number AUSFCC-6783709

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SCHNEIDER ELECTRIC | ) | |
| BUILDINGS AMERICAS, INC., | ) | |
| | ) | No. _____ 21-788 C |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

Plaintiff, Schneider Electric Buildings Americas Inc. ("Plaintiff" or "Schneider"), by and through the undersigned counsel, files this Complaint against the Defendant, the United States of America, and alleges as follows:

## NATURE OF THE ACTION

1.      This action arises from the United States Department of Agriculture's ("USDA") breach of Task Order AG-32SD-D-13-0064 (the "Task Order") and wrongful termination of Schneider under the Task Order, which was issued under an Energy Savings Performance Contract ("ESPC") for the USDA Western Regional Research Center ("WRRC") (the "Project"). The Task Order is in year seven (7) of a twenty-three (23) year term of performance.

2.      Plaintiff has performed all of its obligations under the Task Order, including by installing each of the Energy Conservation Measures ("ECMs") set forth in the Task Order by May 2016 and successfully performing its service obligations thereunder since installation.

3.      Notwithstanding Plaintiff's performance, the USDA materially breached the Task Order and implied covenant of good faith and fair dealing by (1) failing to perform its maintenance and reporting obligations under the Task Order, (2) undertaking subsequent facility remodel

projects that have undermined Schneider's work on the ECMs, (3) failing to compensate Schneider for differing site conditions present at the Project site, and (4) engaging in conduct which prevented, hindered, or delayed Schneider's performance on the Project.

4.    The USDA further materially breached the Task Order by failing to remit payment to Schneider for Schneider's performance.

5.    The USDA also materially breached the Task Order by wrongfully terminating Schneider for default.  The termination of the Task Order by the USDA was wrongful, arbitrary, and in bad faith.

6.    Schneider brings this action to recover all attendant damages suffered as a result of the USDA's breach of contract, breach of the implied covenant of good faith and fair dealing, and wrongful termination for default.  Schneider further requests that the USDA grant judgment in Schneider's favor declaring that Defendant improperly breached the Task Order and terminated Schneider for default.  Alternatively, Schneider requests that the Court issue an order converting the termination for default issued by the USDA to a termination for convenience under F.A.R. § 52.249-2 with costs to be determined.

## PARTIES

7.    Plaintiff, Schneider Electric Buildings Americas, Inc. ("Schneider"), is a Delaware corporation with offices at 1650 West Crosby Road, Carrollton, Texas 75006.

8.    The government entity of the Defendant, the United States of America, is the USDA Agricultural Research Service, an entity of the United States of America with offices at 3450 SW Campus Way, Corvallis, Oregon 97330 and 1815 N. University Street, Peoria, Illinois 61604.

## JURISDICTION

9.    Jurisdiction is conferred by 28 U.S.C. § 1491.

10.     This action is brought pursuant to the Tucker Act, 28 U.S.C. § 1491, and the Contract Disputes Act of 1978, 41 U.S.C. § 7101 *et. seq.*

11.     This action is filed timely pursuant to 41 U.S.C. §§ 7104(b)(1) and 7104(b)(3).

## FACTUAL ALLEGATIONS

### *The Task Order*

12.     An ESPC is a contract issued under the National Energy Conservation Policy Act that provides for the performance of services for the design, acquisition, installation, testing, and, where appropriate, operation, maintenance, and repair of an identified energy or water conservation measure or series of measures.  *See* 42 U.S.C. § 8287(c)(3).

13.     Under the ESPC model, the contractor incurs the cost of implementing the energy savings measures in exchange for a share of any energy savings that directly result from implementation of these measures during the term of the contract.  The contracting agency then pays the contractor over the term of the contract from energy savings, but only if the savings exceed the amount that the contractor would otherwise have paid for the utilities.  The term of the ESPC cannot exceed 25 years.

14.     On December 17, 2008, the United States Department of Energy awarded an Indefinite Delivery Indefinite Quantity, Multiple Award, ESPC to sixteen contractors, one of which was Schneider (the "IDIQ").  Federal agencies negotiate and award task orders under the IDIQ that can be used for federally-owned facilities anywhere in the world.

15.     On or about May 31, 2013, the parties entered into the Task Order for Schneider's work on the Project.

16.     The essential purpose of the Task Order is to provide energy cost savings to the USDA, and the Task Order requires the implementation and maintenance of ECMs in order to ensure those cost savings.

17.     The Task Order is in year seven (7) of a twenty-three (23) year term of performance.

18.     Each of the ECMs set forth in the Task Order were installed and commissioned by Schneider no later than May 2016.

19.     One of the ECMs (ECM 1.1) requires the implementation and scheduled preventative maintenance of water and steam boilers (the "Boiler ECM").

20.     Pursuant to ECM 1.1 of the Task Order, Schneider installed eight Parker boilers (which generate steam) and eight Lochinvar boilers (which generate hot water).

21.     The Boiler ECM constitutes approximately 22% of the total implementation price of all ECMs implemented by Schneider under the Task Order.

22.     The Task Order includes a Risk, Responsibility, and Performance Matrix ("RRPM") and Operations, Maintenance, Repair, & Replacement ("OMR&R") Plan for each ECM, which outlines each party's responsibilities on the Project.

23.     Under the RRPM and OMR&R Plan, the USDA is obligated to perform certain tasks on the Boiler ECM, which include properly treating the water entering the Parker steam boilers, providing all requested historical water treatment documentation to Schneider for review, providing Schneider with daily reporting documentation from the USDA demonstrating completion of task lists (including a running history of what is done daily to the boilers), and advising Schneider of subsequent facility remodel projects, including the addition of process equipment.

24.    Additionally, under the RRPM, unforeseen costs are paid by the party who caused the costs, or by the party who is responsible for that risk area.

25.    For example, the RRPM makes it the USDA's responsibility "to ensure that all ECMs are used properly and in accordance with the Key Operating Strategies contained each [sic] ECM's Design Intent Document and/or Basis of Design in the IGA. … If the Government fails to perform operations and preventive maintenance per Contractor-provided procedures and checklists, and the performance of the installed ECMs is adversely affected, (including manufacturer equipment warranties) the Government will compensate the Contractor for the losses directly attributable to that action."

26.    The USDA is also responsible "for preventive maintenance of pre-existing equipment and systems and new equipment and systems."  If the USDA fails to perform preventive maintenance on designated equipment and systems per Schneider Electric-provided procedures and checklists, and the performance of the Installed ECMs is adversely affected, it must compensate Schneider for the losses directly attributable to that action.

27.    The RRPM further provides that "[a]ll costs associated with any changes to the facility that inhibit the ability to achieve, measure, and verify energy savings will be the responsibility of the Government," and that the Government will be responsible for "[a]ny savings that fail to be generated due to these changes."

28.    Under the OMR&R Plan, the USDA is further required to provide Schneider Electric remote access to the building automation system ("BAS"), which is an intelligent system of hardware and software that allows heating, ventilation, air conditioning and other systems to communicate on a single control platform.

29.     Schneider needs access to the BAS so it can inspect the system and electronically report its findings to the USDA.  Schneider is not responsible for providing any planned service session if remote access is unavailable.

30.     The problems that have arisen with the Boiler ECM were the result of negligence and/or unilateral misconduct by the USDA which caused additional unforeseen costs to Schneider and as such, the USDA is obligated to pay Schneider for these costs.  Specifically, all of the issues with the Boiler ECM were the result of the USDA's failure to meet its maintenance obligations under the Task Order, the USDA's subsequent facility remodel projects that have undermined Schneider's work on the ECMs, and/or unforeseen latent site conditions that materially differed from the conditions at the design phase.

### *The USDA's Breach of its Maintenance Obligations under the Task Order*

31.     In 2014, Schneider installed four Parker steam boilers and eight Lochinvar hot water boilers.

32.     To further satisfy the USDA's steam requirements, in 2015 Schneider installed an additional four Parker boilers.

33.     Approximately one year after installation, the boilers began experiencing performance issues which were caused by unforeseen conditions at the Project site and/or the USDA's unilateral actions.

34.     Schneider has made considerable efforts to investigate and address all reported performance issues with the Boiler ECM, notwithstanding the fact that Schneider was not responsible for the issues under the RRPM and OMR&R Plan.

35.     Many of the performance issues are the result of the USDA's failure to perform its maintenance obligations under the Task Order.

6

36.    In 2017, the eight Parker steam boilers developed pinhole leaks in the tube bundles caused by internal corrosion and tube scale accretion.

37.    Schneider investigated the issue and discovered that the corrosion and interior tube scale accretion occurred because the USDA failed to ensure that the boiler feedwater was chemically treated properly and failed to inject chemicals into the feedwater and steam distribution systems, which is required to prevent this type of corrosion.

38.    The USDA's failure to treat the water before it entered the Parker steam boilers was a breach of its maintenance obligations under the Task Order and resulted in alarms, shutdowns, premature corrosion of boiler tube bundles, water leaks, and water tube failure.

39.    Schneider notified the USDA that the chemical feed pumps needed to be activated and maintained to treat the water and replaced all of the compromised tube bundles.  The USDA did not compensate Schneider for this work.

40.    The USDA also failed to provide Schneider with historical water treatment documentation for Schneider to review, despite Schneider's request for the information and the USDA's obligation to do so under the Task Order.

41.    As another example, the USDA maintenance team failed to perform required bottom blowdowns on the Parker steam boilers, which are a maintenance task performed to remove impurities from the boiler tubes.

42.    The USDA's failure to perform this maintenance task with enough frequency to prevent scaling and corrosion is another violation of the RRPM and OMR&R Plan and has caused additional boiler problems.

43.    Schneider added automatic surface blowdowns to the boilers in 2018 to reduce the impurities; however, bottom blowdowns remain a manual, operator responsibility to protect the boilers.

44.    The USDA also failed to provide Schneider with daily reporting documentation demonstrating that the USDA has completed the requisite maintenance tasks on the boilers, as well as daily, weekly and monthly reports concerning the USDA's completion of its responsibilities under the OMR&R Plan, despite Schneider's requests for the reports.

45.    The USDA's breach of its maintenance obligations under the Task Order has damaged Schneider, including by causing Schneider to incur repair and maintenance costs for which it was not responsible under the Task Order.

### The USDA's Subsequent Facility Remodel Projects in Breach of the Task Order

46.    The USDA has also made changes to the facility's steam system, without Schneider's knowledge or approval, which undermine Schneider's work on the Project.

47.    In the summer of 2019, Schneider was notified that the USDA's de-aeration tank had failed and was not operational.

48.    This original de-aeration tank was pre-existing USDA equipment and not part of Schneider's Task Order.

49.    The purpose of the de-aeration tank is to store and treat condensate from the steam system and remove oxygen before it is returned as feed-water to the boilers.

50.    The USDA, without Schneider's knowledge or involvement, procured a temporary de-aeration tank integral pump assembly and placed it in operation.

51.     The procurement of the temporary tank is a major change to a critical steam system component and under the Task Order, the USDA is responsible for the additional costs incurred due to the temporary tank.

52.     In November 2019, the Parker boilers experienced a massive boiler failure and flooding event as a result of USDA's unilateral installation of the temporary tank.

53.     Schneider and its service contractor investigated the event and found that the temporary de-aeration tank procured by the USDA was feeding water into the boilers at the incredibly high pressure of 250 to 300 psi.  The typical operational rate is between 90 and 100 psi.

54.     As a result of this excessive pressure, the boiler pressure relief and feedwater solenoid valves on several boilers failed and water flooded the boiler chambers causing equipment failure and flooding the local steam header.

55.     Schneider reported its findings to the USDA, who procured additional equipment to reduce the feedwater pressure.

56.     The USDA caused Schneider to incur the unforeseen cost of repairing the boilers after the failure event.  Under the RRPM, the USDA is responsible for that cost.

57.     Schneider also discovered that the building pressurization is not properly controlled, creating unstable negative air pressure in the mechanical rooms, which results in unstable boiler operations.

58.     Upon investigation, Schneider learned that at some point after the Boiler ECM was accepted, the USDA had modified the Heating, Ventilation, and Air Conditioning ("HVAC") systems without consulting or notifying Schneider Electric.

59.     The USDA's modifications caused unstable boiler operations, resulting in Schneider responding to additional service calls.  Accordingly, under the Task Order, the USDA is responsible for the costs of these additional service calls.

60.     Finally, a significant and continuing issue with the Project concerns changes the USDA has made, without Schneider's knowledge or consent, to the BAS installed by Schneider under the Task Order.

61.     A BAS is an intelligent system of hardware and software that allows heating, ventilation, air conditioning and other systems to communicate on a single control platform. Schneider installed the BAS, which was accepted by the USDA in January 2015.

62.     At some point after the BAS was installed, the USDA hired other contractors for other projects and these contractors altered and modified the BAS without Schneider's knowledge or participation.  The alterations included adding new hardware, points, and graphics to the BAS, which compromised BAS network communications in the South Wing of the WRRC and resulted in: (i) unreliable data transfers between the South Wing and the BAS server; and (ii) the obstruction of accurate data collection through the BAS for annual savings calculations.

63.     The USDA's changes have compromised network communications, caused unreliable data transfers, and prevented the accurate data collection through the BAS for annual savings calculations.

64.     Thus, the USDA again breached its obligation to inform Schneider of subsequent facility remodel projects that would affect the ECM.

65.     In addition, the USDA cancelled the remote access service to the BAS required under the Task Order, which removed Schneider's ability to access and query the BAS to review operations and performance data and assist USDA site engineers with troubleshooting.

66.    Schneider prepared and presented formal proposals to the USDA to troubleshoot, repair, restore, and maintain the BAS in September 2018, but the USDA rejected the proposals.

67.    After the USDA rejected Schneider's proposal, the BAS failed in March 2019.  The USDA attempted to recover the lost hard drive data, but its efforts were not successful.

68.    Schneider assisted the USDA in its efforts to acquire an updated version of the BAS application (Continuum).   Schneider also worked with the USDA and the controls vendor (EMCOR) to find and restore a BAS database backup.  However, the user interface graphics (PIC files) were not backed up and Schneider advised the USDA that the files will need to be recreated. As of the time of Schneider's last site visit in December 2019, the BAS graphics were still non-operational.

### Latent and Differing Site Conditions with the Boiler ECM

69.    The USDA is also responsible for the additional costs that Schneider incurred based on latent conditions that were materially different from what was anticipated by the Task Order and conditions that are unusual in this type of work.

70.    After the boilers were installed, they began to experience operation issues due to conditions that were materially different from those measured during the design phase.

71.    During the Project design, the utility gas pressure entering the building was measured at 10 psi.  Schneider relied on this measurement of 10 psi when designing and installing the boiler system.

72.    Approximately one year after acceptance, several boilers (primarily the Lochinvar boilers) began experiencing flame failures.   On October 3, 2015, all 16 boilers tripped simultaneously, which was an extremely unusual event.

73.    Schneider investigated these failures and found that the cause was an interruption in gas pressure supplied by the local utility, PG&E.  Specifically, the gas pressure entering the facility was found to be at approximately 6 psi, which resulted in insufficient gas volume for the boilers to function properly.

74.    Schneider reported the deficient gas volume to the USDA, gas pressure entering the Lochinvar boiler B-6 increased, and the problem was resolved for that boiler.

75.    In March and April 2019, lock-out alarms were triggered on several of the boilers. Schneider and its service contractor investigated the issue and monitored the gas pressure. Schneider discovered that, once again, the utility gas pressure was much lower than what had been measured during the Project design.

76.    Schneider reported the issues to the USDA, and the gas pressure again temporarily increased.

77.    Despite Schneider's repeated notifications to the USDA that the gas pressure entering the facility needed to be increased, in December 2019, the gas pressure was measured at approximately 6 psi.

78.    Additionally, dirty air entering the boilers from the mechanical rooms has caused ignition trips and lockout alarms.

79.    Schneider addressed the issue by installing inlet air filters on the Lochnivar boilers to keep the air as clean as possible.

80.    The USDA must maintain the air filters and correct building pressurization to prevent triggering the boiler alarms.

81.    The USDA has also failed to provide Schneider with daily reporting documentation demonstrating that the USDA has completed the requisite maintenance tasks on the filters, despite

Schneider's requests for the reports, in further breach of its reporting obligations under the Task Order.

82.    The IDIQ incorporates F.A.R § 52.236-2, which applies to differing site conditions.[1]

83.    The utility gas pressure, building static air pressure, and dirty air in the mechanical rooms were latent or subsurface conditions that were materially different from the provisions of the Task Order and from conditions ordinarily encountered in similar contracts.

84.    Schneider could not reasonably have anticipated the latent physical conditions from a knowledgeable interpretation of the Task Order.

85.    The USDA had actual or constructive notice of the latent or unusual conditions because the USDA made service requests which prompted Schneider to investigate the conditions, Schneider remedied any problems that these conditions caused to the boilers, and Schneider informed the USDA about those conditions and/or conducting proper maintenance to in light of the conditions to prevent future issues with the boilers.  *See* 48 Federal Acquisition Regulations ("F.A.R.") § 52.236-2(b).

### The USDA's Responsibility for Additional Costs Incurred

86.    Each of the above issues caused unforeseen costs to Schneider.

87.    The October 3, 2015 boiler failure cost Schneider $5,257.50 in service costs to respond to the failure.

---

[1] F.A.R § 52.236-2 provides that a contractor may recover for differing site conditions under two circumstances: first, if (1) subsurface or latent physical conditions at the site differ materially from those indicated in this contract, or (2) if the contractor discovers unknown physical conditions at the site, of an unusual nature, which differ materially from those ordinarily encountered and generally recognized as inhering in work of the character provided for in the contract.

88.    The replacement tube bundles for the Parker boilers in 2017 cost Schneider $105,760.62 in parts and subcontractor labor.

89.    The installation of the automatic surface blowdowns in 2018 to the Park boilers to remedy issues from the USDA's failure to perform blowdowns cost Schneider $44,800.00.

90.    The feedwater pressure damage in 2019 due to the USDA's failure to properly treat the water caused Schneider to incur $34,044.16 in direct cost for Schneider's labor and travel to the site.

91.    Schneider was forced to incur expenses in the amount of $17,000.00 for unbudgeted site visits in order to manually troubleshoot and/or extract data that would otherwise have been accessible via remote access service to the BAS.

92.    The Lochnivar boiler inlet air filter that Schneider installed in 2020 cost Schneider an additional $12,491.60.

93.    In total, the aforementioned issues have cost Schneider $219,371.88 in parts and labor to respond to the unanticipated costs that were not accounted for under the Task Order and were caused by the USDA and/or latent or differing site conditions.

94.    The USDA has not compensated Schneider for any of the aforementioned costs, despite its obligation to do so under the Task Order.

95.    Each of the foregoing operational issues with the Boiler ECM were caused by the USDA's failure to properly operate or perform daily, weekly, or monthly maintenance on the boilers, the USDA's unilateral actions taken without Schneider's knowledge or approval, and/or unknown site conditions which were different from the Project specifications and outside of Schneider's control.

96.    Under the express terms of the RRPM, Schneider is not responsible for performance issues caused by existing USDA equipment, building conditions, outside energy sources such as inoperable chemical feeders, extreme feedwater pressurization conditions caused by the USDA's temporary de-aeration tank and the reduced utility gas pressure provided by PG&E, and changes made to the building which impact the ECM.

97.    The USDA's failure to reimburse Schneider for these costs is a material breach of the Task Order.

98.    Moreover, each of the aforementioned issues caused a constructive change to the Task Order, for which Schneider Electric is entitled to an equitable adjustment to the terms of the Task Order.

99.    The USDA's misconduct, negligence, and failure to properly maintain the boilers caused Schneider to incur additional work which was outside of the scope of the Task Order.

100.    Schneider is entitled to equitable adjustment in the form of reimbursement of the actual costs of the changed work.

### Communications Between the USDA and Schneider about the Boiler ECM

101.    All of the above-described events and circumstances have been the subject of many discussions and meetings between Schneider and USDA representatives.

102.    During a meeting held on May 30, 2019, the USDA requested a plan of action to resolve the boiler issues.

103.    Schneider provided that plan of action to the USDA on June 27, 2019.

104.    Schneider and USDA representatives met to discuss the plan in July 2019, at which point the USDA told Schneider that the cure notice would be sent shortly.

105.    The USDA sent a cure notice on July 10, 2019, to which Schneider promptly responded.

106.    Additionally, after the USDA issued the July cure notice, meetings were held on nearly a bi-weekly basis to discuss the USDA's concerns and Schneider's plan for addressing them.

107.    In September 2019, the USDA mistakenly claimed a plan of action had not been submitted.

108.    Schneider promptly responded on September 27, 2019, and again submitted its June 27, 2019 plan.

109.    By December 2019, Schneider's plan of action had been fully implemented and comprehensive reports on the Parker and Lochinvar boilers were provided to the USDA.

110.    On December 11, 2019, the parties met to discuss the reports.  The USDA indicated that while they appreciated the reports, the USDA still lacked some information and did not agree with the operational assessment of the boilers set forth therein.  No specifics were provided and there was no indication that the entire Task Order was under threat of termination.

111.    Since then, Schneider has continued to communicate with the USDA via email and phone calls, including by calls with Robert Risch, the Acting Contract Administrator.

112.    Schneider has repeatedly requested to meet with the USDA to discuss any of its concerns, but since December 2019, the USDA has not responded to those requests.

113.    Thus, Schneider has demonstrated its commitment to performing to the USDA's satisfaction by its responsiveness to each concern the USDA has raised, and its repeated attempts to address those concerns.

114.    On February 7, 2020, the USDA sent a Show Cause Notice ("Show Cause Notice") to Schneider.

115.    The Show Cause Notice was addressed to Rachelle Baines in Carrolton, Texas, who was out on maternity leave at the time, so Schneider was not aware of the Show Cause Notice.

116.    On March 17, 2020 the USDA sent a Termination for Default Notice ("Termination for Default Notice").

117.    Once Schneider became aware of the Termination for Default Notice and Show Cause Notice, it promptly responded to both notices on April 6, 2020, addressing the USDA's concerns and explaining that its failure to respond sooner was due to the fact that Rachelle Baines was on maternity leave (the "April Response").

118.    Schneider has repeatedly attempted to contact the USDA Contracting Officer ("CO") and Contract Administrator ("CA") to request additional information regarding the issues raised in the Show Cause Notice and Termination for Default Notice and any ongoing concerns regarding the Project's performance.

119.    Following the April Response through July 24, 2020, Schneider continued to respond to the USDA's service calls, but the USDA never responded to any of Schneider's requests to discuss the Task Order or the USDA's outstanding concerns.

120.    Until July 26, 2020, Schneider and its subcontractors had access to the facility to perform Schneider's maintenance obligations under the Task Order and address ongoing service issues raised by USDA.

121.    On August 12, 2020, when Schneider attempted to schedule a technician to respond to a July 24, 2020 service request, it was informed that it could not access the facility and because the Task Order was terminated for default.

17

*The Termination and Request for Reconsideration*

122.    On July 30, 2020, the USDA sent a letter to Schneider terminating the Task Order for default (the "Termination Letter").

123.    The Termination Letter stated that the reason for the termination was "continued interruption of services from single/multiple boilers" and Schneider's "insufficient" response to the termination notices were the reasons for the termination.

124.    On October 13, 2020, Schneider sent a Request for Reconsideration of Termination for Default to the USDA, asking the CO to reconsider the decision.

125.    Schneider has not heard from the USDA regarding its Request for Reconsideration, and the USDA has not withdrawn its decision to terminate Schneider for default.

126.    Termination for Default is not justified because Schneider fully performed its obligations under the Task Order.

127.    Each of the ECM set forth in the Task Order were installed and commissioned no later than May 2016.

128.    The USDA has received the full benefit of the bargain under the Task Order, in the approximate amount of $4,160,887 in cost savings as of November 2020.

129.    Schneider has demonstrated on ongoing commitment to the Project and made a good faith effort to respond to the USDA's concerns.

130.    However, the USDA has not made a good faith effort to abide by the Task Order.

131.    Based upon the foregoing, on November 16, 2020, Schneider submitted a claim for $219,371.88 plus accrued interest, in additional costs incurred by Schneider.

132.    The USDA has not responded to the claim and is therefore deemed to have denied the claim.

*The USDA's Failure to Remit Payments*

133.    The Task Order sets forth a progress payment schedule (the "Payment Schedule")
as Schedule TO 1 or Annex 1, which is a schedule of the USDA's payment obligations to Schneider
based on the energy savings that the USDA will achieve over the twenty three (23) years of the
Project.

134.    Schneider incurred the cost of implementing the ECMs on the Project upfront.

135.    Schneider completed its implementation work under the Task Order in or around
May of 2016.

136.    In Year 1, although the performance of the ECMs was better than anticipated, the
amount of verified savings fell short of the projected savings because there was a delay in finalizing
and completing the work on the Boiler ECM, so savings were not measured over an entire calendar
year.

137.    Schneider and the USDA renegotiated the contract price for Year 1 to account for
that difference (the "Year 1 Revised Payment").

138.    After Year 1, the guaranteed energy savings have been achieved in each year of the
performance period to date.

139.    In accordance with the Payment Schedule and the Year 1 Revised Payment, the
USDA remitted payment to Schneider for its Year 1 (01/01/2015, $799,790.84), Year 2
(01/01/2016, $820,149.90), Year 3 (01/01/2017, $841,107.01), and Year 4 (01/01/2018,
$862,680.70) payment obligations.

140.    For Year 5 (01/01/2019, $884,890.09), the USDA did not remit payment for its
obligations when it was due on January 1, 2019.

141.    On March 19, 2019, the USDA remitted a late, partial payment of only

$334,576.06, which left an unpaid balance of $550,314.03.[2]

142.    In accordance with Annex I, the USDA's payment for its Year 6 (01/01/2020, $907,754.90) obligations to Schneider was due on January 1, 2020.  The USDA did not remit payment for its Year 6 obligations on January 1, 2020.

143.    Schneider representatives made numerous requests, both in writing and orally, to USDA representatives for the release of the payments.

144.    On July 30, 2020, the USDA issued a letter to Schneider indicating that it decided to file for Termination for Default.

145.    On August 11, 2020, the USDA remitted a total payment of $652,298.40.

146.    To date, despite due demand and indisputable obligation, the USDA has failed to remit the remaining balance of its Year 5 and Year 6 payment obligations to Schneider, totaling $805,770.53.  Thus, the USDA is in default on its Year 5 and Year 6 payment obligations to Schneider in the amount of $805,770.53.

147.    In accordance with Annex I, the USDA's payment for its Year 7 (01/01/2021, $931,295.48) obligations to Schneider was due on January 1, 2021.  The USDA did not remit payment for its Year 7 obligations on January 1, 2021.

148.    Thus, the USDA is in default on its Year 7 payment obligations to Schneider in the amount of $931,295.48.

149.    Schneider has covered $1,737,066.01 in payments on the loan since the USDA defaulted on its payment obligations.

---

[2] Pursuant to www.usaspending.gov, the remaining balance of USDA's Year 5 payment obligations to SEBA has been fully funded.  *See* Award Page, available at https://www.usaspending.gov/award/CONT_AWD_AG32SDD130064_12H2_DEAM3609GO29042_8900.

150.    As of January 1, 2021, the termination liability amount for the loan is $12,454,204.77.

## COUNT I

### WRONGFUL TERMINATION FOR DEFAULT

151.    The allegations set forth in Paragraphs 1-150 are incorporated by reference as if fully set forth herein.

152.    The CO's termination for default was improper.

153.    Schneider timely completed the work under the Task Order and commissioned the ECMs, which were accepted by the USDA.

154.    The boiler issues were caused by the USDA's failures to properly operate and maintain the boilers, the USDA's unilateral action taken in breach of the Task Order, and/or conditions at the Project which differed from the conditions during the design phase.

155.    Still, Schneider responded to every Boiler ECM performance issue in a timely manner and remedied each of those issues as they arose.

156.    Indeed, most of the work performed by Schneider in response to the USDA's service calls addressed issues that are the USDA's responsibility under the Task Order.

157.    Thus, Schneider has not failed to perform in any manner contemplated by the F.A.R. to allow for a Termination for Default under F.A.R. § 52.249-8.

158.    Schneider is entitled to damages incurred as a result of this wrongful termination, in an amount to be proven at trial.

159.    Alternatively, the Termination for Default should be converted to a Termination for Convenience of the Government and Schneider should be permitted to present a final settlement termination proposal to Defendant, pursuant to F.A.R. § 52.249-2.

## COUNT II

### BREACH OF CONTRACT – MAINTENANCE OBLIGATIONS

160.    The allegations set forth in Paragraphs 1-159 are incorporated by reference as if fully set forth herein.

161.    The Task Order requires the USDA to perform maintenance on the Boiler ECM.

162.    The Task Order also requires the USDA to submit maintenance reports to Schneider about maintenance work performed on the Boiler ECM.

163.    The USDA materially breached the Task Order by failing to comply with its maintenance obligations and failing to submit the maintenance reports.

164.    Schneider is entitled to damages incurred as a result of this breach, in an amount to be proven at trial.

## COUNT III

### BREACH OF CONTRACT – SUBSEQUENT FACILITY REMODEL PROJECTS

165.    The allegations set forth in Paragraphs 1-164 are incorporated by reference as if fully set forth herein.

166.    Under the RRPM and OMR&R, the USDA is obligated to inform Schneider of subsequent facility remodel projects that would affect the ECMs.

167.    Under the OMR&R Plan, the USDA is further required to provide Schneider Electric remote access to the building automation system ("BAS"), which is an intelligent system of hardware and software that allows heating, ventilation, air conditioning and other systems to communicate on a single control platform.

168.    The USDA materially breached the Task Order by failing to inform Schneider of subsequent facility remodel projects, including the temporary de-aeration tank it installed and the changes it made to the BAS which cut off Schneider's access remote access to the BAS.

169.    Schneider is entitled to damages incurred as a result of this breach, in an amount to be proven at trial.

**COUNT IV**

**BREACH OF CONTRACT – DIFFERING SITE CONDITIONS**

170.    The allegations set forth in Paragraphs 1-169 are incorporated by reference as if fully set forth herein.

171.    The USDA materially breached the Task Order by failing to compensate Schneider for the latent/differing site conditions present at the Project site.

172.    Schneider is entitled to damages incurred as a result of this breach, in an amount to be proven at trial.

**COUNT V**

**BREACH OF CONTRACT – FAILURE TO REMIT PAYMENT**

173.    The allegations set forth in Paragraphs 1-172 are incorporated by reference as if fully set forth herein.

174.    The Task Order requires the USDA to remit payments to Schneider in accordance with the Payment Schedule.

175.    The USDA materially breached the Task Order by failing to comply with its payment obligations.

176.    Schneider is entitled to damages incurred as a result of this breach, in an amount to be proven at trial but approximating $1,737,066.01, plus accrued interest.

## COUNT VI

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

177.    The allegations set forth in Paragraphs 1-176 are incorporated by reference as if fully set forth herein.

178.    As with all government contracts, the IDIQ and Task Order contain implied duties of good faith and fair dealing, which includes a duty to cooperate and an obligation that neither party will do anything to prevent, hinder, or delay performance.

179.    The USDA's failure to properly maintain the boilers caused delay in Schneider's ability to meet its energy savings obligations under the Task Order.

180.    The USDA further hindered Schneider's performance under the Task Order by the improper changes it made, without Schneider's knowledge or consent, to the BAS.  These changes compromised network communications and data collection, which harmed Schneider's ability to generate cost savings calculations, monitor the Boiler ECM, and provide service and support on the Project.

181.    Additionally, the USDA prevented Schneider's performance under the Task Order by canceling Schneider's contractually-required remote access service to the BAS.

182.    Moreover, the USDA also breached this duty by its failure to cooperate with Schneider on remedying the boiler issues.  Despite Schneider's repeated professional and good faith attempts, the USDA has halted all communication with Schneider about these issues.

183.    In fact, the USDA has refused to communicate with Schneider regarding the Task Order since April 2020, despite the fact that Schneider continued to respond to the USDA's service calls until it was denied access to the site.

184.    As such, as an alternate theory of recovery, Schneider is entitled to damages incurred as a result of the USDA's breach of its implied duties of good faith and fair dealing, in an amount to be proven at trial.

**WHEREFORE**, Plaintiff, Schneider Electric Building Americas, Inc., respectfully request that this Court enter judgment in favor of Schneider Electric Building Americas, Inc. and against the Defendant, the United States, which:

(i)     declares that Defendant wrongfully terminated the contract for default;

(ii)    declares that Defendant breached the Task Order;

(iii)   awards Schneider Electric Building Americas, Inc. monetary damages for Defendant's wrongful termination of contract;

(iv)    awards Schneider Electric Building Americas, Inc. monetary damages for Defendant's failure to remit payment in the amount to be proven at trial, but believed to be $1,737,066.01 plus accrued interest;

(v)     awards Schneider Electric Building Americas, Inc. monetary damages for Defendant's breaches of the Task Order in the amount to be proven at trial, but believed to be $219,371.88 plus accrued interest;

(vi)    alternatively, orders that the termination for default issued by the Defendant, the United States, be converted to a termination for convenience, and, as such, Schneider Electric Building Americas, Inc. retain the right to present a final settlement termination proposal to the Defendant, the United States, pursuant to F.A.R. § 52.249-2, including therein, but not limited to, all costs incurred by

Schneider Electric Building Americas, Inc. related to the wrongful termination for default;

(vii)    awards Schneider Electric Building Americas, Inc. its costs, expenses, interest and attorneys' fees incurred pursuant to the Equal Access to Justice Act (28 U.S.C. §2412 *et. seq*.); and

(viii)    grants Schneider Electric Building Americas, Inc. such other relief that this Court deems just and appropriate.

Respectfully submitted,

**SCHNEIDER ELECTRIC
BUILDING AMERICAS, INC.**

DATED:        January 22, 2021                **HINCKLEY, ALLEN & SNYDER LLP**
              Albany, New York

                                By:     *s/ James J. Barriere*
                                        James J. Barriere, Esq. (4630659)
                                        *Attorneys for Plaintiff*
                                        *Schneider Electric Building Americas, Inc.*
                                        30 South Pearl Street, Suite 901
                                        Albany, New York 12207
                                        P: (518) 396-3100
                                        F: (518) 396-3101
                                        E: jbarriere@hinckleyallen.com